Verlo v. City and County of Denver. Again. Right? Not quite, Your Honor. Slightly different parties and postures this time. Hopefully the last time, but no guarantees. Good morning, Your Honors, and may it please the Court. Jeffrey Klingsporn, Assistant City Attorney for the Appellant, City and County of Denver. The principal question before the Court today is whether the District Court's finding of contempt against Denver survives its almost simultaneous dissolution of the preliminary injunction on which that contempt was based. And, specifically, whether these circumstances fall under the now 70-odd-year-old rule of United Mine Workers that private parties' right in a contempt proceeding to compensatory relief is, quote, dependent on the outcome of the basic controversy. Denver's position is that it does fall under this rule, and that when the District Court dissolved the preliminary injunction, thereby finding that, in these circumstances, that its initial determination on the forum status of the Courthouse Plaza was in error, that that contempt finding fell. In error, it was, it dissolved it in part because City of Denver changed its position, did it not? I disagree, Your Honor. The City did change its position. Dramatically. Consistently, the City held that the forum status of the Plaza was to be designated by as such by Denver. And what did you hold? What was in the stipulation? I thought the stipulation was exactly to the effect that it was a traditional public forum. Absolutely not, Your Honor. That is a point of confusion throughout this case, because plaintiffs So we got that wrong in our prior opinion, because we sure said that was a stipulation and that was the scope of it. The stipulation, and it's at multiple points in the record here, stipulates that Denver agrees that the Lindsay Flanagan Plaza is a public forum. The word traditional appears nowhere in the stipulation that it was never Denver's position that it was. And frankly, the way traditional public forums work, it wouldn't matter if Denver stipulated to whether it was traditional or not. Traditional public forums, as the Supreme Court all the way down to the District Court here held and have agreed, that's a sidewalks, it's public parks, it's streets. From time immemorial, these sort of free speech easements on the public land, that's a traditional public forum. Indeed, but for purposes of disposing of the litigation, it would matter, because it would be what is your position on something that otherwise would be a contested issue, right? Yes, if that were, but it would not be binding on the court as a question of law. Parties can't stipulate to legal answers. And as I believe this Court said in the first Verlo appeal, you know, you can't simply take Denver's designation as a designation, even if it's a designated public forum. And I think the same would hold true for if Denver purported to stipulate that this was a traditional public forum. Are we getting into the area of invited error? First you say it is, then you say it is, and then you change your mind. I mean, where are we? Potentially, if the Court had relied on this purported change in position by Denver to reach its subsequent conclusion on the – on dissolving the preliminary injunction, the Court noted it, noted its confusion about it, but its ultimate conclusion, as we cite in our brief and it is clear, was that the parties remained in functionally the same position as they were at the preliminary injunction, and that the change of position was entirely prospective. That is, even the memorandum of understanding and the status report that the State filed was to – had no effect on the position of the parties before the Court, and that no – And Denver is no longer a party in this litigation. Isn't that right? Oh, we've been dismissed since more than a year ago. Since you stipulated. Yes. We stipulate – well, we stipulated – again, this is – one of the ironies of this case is that Denver never opposed the entry of the preliminary injunction that we were later found in contempt of. We stipulated before the preliminary injunction hearing to our position that we maintained throughout the lawsuit until – until before trial, and based on that stipulation, the Court found that plaintiffs had no standing against Denver and dismissed us from the case, yes. Which meant that your role, your stipulation, was decisive in the termination of your status in this case, and you walked back that stipulation right before the time in which the Court dissolved the injunction. We – throughout the litigation, the Court and the parties, but particularly the District Court, noted that the question of who spoke for the plaza, as it was put, of which authority governed if the – if the two parties were speaking and, you know, had different opinions on the And the District Court, throughout the proceedings, and again, in a request for a status report just before trial, essentially asked, who's going to solve this for me? How do I make this determination? Parties, tell me if we need to go to state court and make this determination. About who governed? All right. The result – one of the results was that the State and the City got together and resolved that question and filed the answer with the Court. Your Honor, we have talked, and we now agree that we both have – we both have authority, and we're going to jointly manage the perspective memorandum of understanding. It's going to set up a joint committee, discuss these issues, and we are no longer – we are no longer at odds. If there's any doubt about the forum's – whether the forum has been designated, the same doubt that the panel in the first about, well, you know, what is Denver's intent? How do we judge Denver's intent? Does Denver's intent govern? To make that clear and avoid any confusion, the parties, Denver and the State, jointly managing the courthouse plaza now under their joint authority, said, here's our intent going forward. Unless you tell us this is a traditional public forum, in which case it is what it is, categorically, then we are going to remove the designated public forum status post-trial. Well, if the question of who spoke for the plaza was not determined, and then it was changed right before the Court decided to dissolve the matter. Because the district court specifically said, I do not need to consider Denver's position in this order. Said, I've come to the conclusion that, you know, I'm confused about their status. We might have a separate sovereign situation here, but I've concluded that – and this is the sentence or two sentences. And from then on, there's no more mention of Denver's position, Denver's intent. And didn't it make that decision because Denver had stipulated and gotten out of the case? If Denver was still in the case, that – well, first back up a few steps. Remember that just before trial, another – the Court had issued another order saying, I see this new MOU and this prospective intent. Parties, tell me, does Denver need to be in the case? And Denver responded, no, we don't need to be in the case because the categorical analysis is going to be what it is, regardless of what we say in the future the plaza's designated status is. The state filed a brief saying essentially the same thing. It's not going to change how we argue the case. And plaintiffs filed nothing. So, no party thought that Denver should be in the case. And the district court took that, discharged the order to show cause, and decided the case without regard to the change circumstances reflected in the MOU. So, circumstances did change. They did not affect the ultimate decision on the forum status of the plaza. Well, if the Second Judicial District is part of that MOU, when Denver's status changed, so did its status. And so, how could it not be part of the – you know, the line about, oh, I don't have to be concerned about Denver. Well, even if it's just concerned about the Second Judicial District, it's a concern about the Second Judicial District because of their relationship with the city of Denver now. It exists now. So, I mean, I don't see why the change, the joining of the two, the settling of the issue, who speaks for the plaza, nevertheless, is implicated. Even if the court says, I don't care about Denver anymore. By inference, it has to care about Denver because there wouldn't be the MOU but for that, right? But nothing in the court's final findings of fact and conclusions of law relies at all on the MOU. In that sense, it is an immaterial fact. It relies on the forum analysis, the categorical forum analysis set forth by this court and the Supreme Court, which is the bulk of its legal analysis in the conclusions of law, and the physical characteristics of the forum. Neither of those changed at all throughout this litigation. There were no new cases on forum analysis from this court or from the Supreme Court. Why did the district court err in holding Denver in contempt? I think we're getting lost in the weeds here. Indeed, Your Honor. Thank you. Aside from the United Mine Workers' Rule, which we think disposes of this as a legal matter, that having reversed itself on the forum status. Did it reverse itself because it had made a legal error? It may, yes, in the sense that it determined for the preliminary injunction that the forum status needed to be considering that the plaintiffs were likely to succeed on their argument that this was a public forum because of Denver's stipulation. Reverse both of those? Wait a minute. Because of Denver's stipulation, they were likely to succeed. Denver walks back its stipulation. Now things change and now enter a different order. So because the record has changed based upon Denver's stipulation, I don't get it. I understand your confusion. Really? Because maybe your argument has a problem. Let me lay out the argument more clearly. The preliminary injunction the district court held that it could, that plaintiffs were likely to succeed on their argument that one, this was a public forum. Come 18 months later, the judge reverses both of those, saying I don't need to, you know, plaintiffs can't, I don't need to rely on Denver's position, Denver's stipulation, and two, it doesn't affect the public forum status. In fact, as the court put it, there is no basis for treating the restricted area as anything but a non-public forum. So on the two key determinations it made to grant the preliminary injunction, it winds up completely flipped on the other end. And not because of anything Denver did. This is some, I know we got a limited amount of time, but both of you agree we have jurisdiction. I'm not that clear that we do. And this is why. When you look at our O'Connor decision, which is a contempt case, it speaks of the notion of having to have, I think what it describes as specific, unavoidable consequences related to a finding of contempt. And it seems to me that, so the logic would be this. There is a contempt, a finding of liability. There is a determination there will be contempt sanctions, compensatory sanctions, but no number is put on that. So how is that specific and unavoidable consequences when you look at our cases that say that unless you turn that determination of attorney's fees into a number, it in itself is interlocutory. So the logic would be you've got a finding of contempt, that goes to liability. You've got a compensatory sanction, but it is undefined, and therefore you don't have specific unavoidable consequences. Our Gonzalez case, which you cite, O'Connor, both of them, all contempt cases, don't seem to support the position that we do have jurisdiction. I'll shut up. Please tell me why I'm wrong. I think the reason is American Soda and the Budenik case. American Soda was not a contempt case, and there were two different orders there. How does that help you? It was the same order, but two different determinations. American Soda just seems to be a straightforward application of Budenik. Budenik. Budenik. Yes. I think that same straightforward application of Budenik applies here. There's an order, finds Denver contempt, and there's another part of the order. The sanction is attorney's fees to be determined. This Court can review the finding of contempt, and it has nothing to do with the amount of the sanction that ultimately imposed, and it's Budenik that tells us, just draw that straight line. Don't worry about whether the damages are merits or fee shifting or statutory or contractual. If they're attorney's fees, and this is an attorney's fees only rule, they're attorney's fees, they're collateral, go ahead and review this. What do I do with O'Connor? What do I do with Gonzalez? What do I do with these cases that seem to make it clear that there isn't something specific, and specific means numbers? That's what O'Connor talked about, $150,000, I think, a number. There is no number here. There is no number here, Your Honor. I see my time has expired. Do you have more questions? No. Do you want more time? Okay. Thank you. Thank you. Good morning, Your Honor. It should be on your right-hand side. Oh, it's down here. This one. Thanks. Thank you, Your Honor. Good morning. My name is Andy McNulty on behalf of the law firm Kilmer, Lane & Newman. I'm here on behalf of the appellees who are seated in the front row of the courtroom back here. We have Kirsten Tynan of the Fully Informed Juror Association, Mr. Verlo, and Ms. Mattson. Your Honor, defendant asked this court to rule on two issues in a way that would significantly undermine the rule of law. First, Denver asked this court hold that if an individual or entity violates a court order that has been correctly entered at the time that it was entered, later changes its position in a way to dissolve that order, they should not be liable for violating that order and be held in contempt. Secondly, Denver asked that an entity enjoined from certain activity has no duty to inform its officers, agents, employees, and particularly the officers, agents, and employees most likely to undertake that activity. Well, here the district court, from the verbiage it uses in its contempt order, refers to the requirement, as it saw, for Denver and its entities to educate police officers. He certainly, the court certainly used that word. Educate, is that part of its prior ruling? Your Honor, I think the court was using the term educate equally with inform. Later in the order, the court talks about informing. Denver failed to inform. Does educate the same as informing or giving notice? I think so, Your Honor. You could post, this is, you know, big print. This is a revised Plaza order, and notice the parts that are red, you know, lined out. Those no longer apply. That's a notice. That's correct, Your Honor. Would that be enough here? That would be enough here, but that didn't happen, and the evidence shows that it didn't happen. But the district court spoke in language of educate, and that seems to be, to be a lot more intricate. You're right. Having classes, you know. I don't dispute that the district court used educate at one point in its order, but it also used inform at the end of its order when it went into specifically why it was holding Denver in contempt. And it was shown through the evidence that Denver didn't even inform its officers in District 6 of the Plaza order. There was a probable cause statement written by a new trainee, someone who had just gone through the training at Denver and who had not been informed of the Plaza order, an officer named Chase Magalis. Corporal Waldock, one of the higher ranking officials at District 6, he testified unequivocally that he had never been informed of the Plaza order. He testified that when he showed up at the Lindsay Planning Plaza, a sheriff handed him an unredacted Plaza order, and he testified that a sheriff's deputy named Wynn told him that there was probable cause to arrest the FEDRA member because of the Plaza order itself. There was legion evidence in the record of no notice given to those officers at District 6, the district that patrols the Lindsay Planning Plaza. So I think that even under, I think that there's at least a notice requirement required in preliminary injunctions, and to say that there is no notice requirement would undermine the idea of preliminary injunctions against entities and officers. But again, that's not the verbiage that the district court used to hold Denver in contempt. It said, I'm holding you in contempt because you did not educate. I believe it also talked about notice, Your Honor, on page 15 of the order. What do we do with the change of the situation as far as whether or not the preliminary injunction still stands? That is, the district court either dissolved or reversed its ruling in April, and then in May has this contempt proceeding and issues a contempt order based on violating the preliminary injunction it had just either dissolved or reversed a month before. I think the verbiage the court used was dissolved, Your Honor. It didn't reverse its preliminary injunction order, and I think that's an important distinction. Also, Denver wasn't a party to the case at the time. The basis for its dissolution was what, as you see it? A finding that we hadn't proven our case, that the Lindsay Flanagan Plaza was a traditional public forum because it had been de-designated by Denver at that point. They had entered into a memorandum of understanding with the judicial district that the Lindsay Flanagan Plaza was no longer a designated public forum, and that's what the Tenth Circuit based its ruling on in the appeal of the preliminary injunction. When it affirmed, it said, we don't need to decide whether this is a traditional public forum or not because Denver has already said this is a designated public forum, and therefore the same rights that are extended in a traditional public forum are the same in a designated public forum, so we don't even need to reach that issue. But then it took pages of dicta to outline if that issue does come up at the final trial, then this is how you should decide it. So — And what did the district court do after it read our opinion? The district court proceeded as normal. The district court saw that Denver had designated the forum. It didn't dissolve the injunction. It kept the injunction because — Did it change its view as regards the status of the plaza? I don't believe so, Your Honor. I think the time that it changed its view with regards to the status of the plaza is when Denver entered a memorandum of understanding with the judicial district, which happened a few months before trial, which was in 2017, nearly two years after the Tenth Circuit had heard arguments on the preliminary injunction. Well, what do you do with the argument that was just made by opposing counsel that essentially Denver's position was irrelevant to the district court in its ultimate determination of whether to dissolve the injunction or not? I think that's right on some level. Okay. I think it's — so the district court was only ruling with regards to the judicial district at trial. Yes. Denver was out of the case because they had stipulated out of the case. They had been dismissed for lack of jurisdiction, not for lack of meritorious claims. And so — Standing, right? Standing, correct. There we go. Yes. And so at the trial, the designation by Denver wasn't as important because they had entered into a memorandum of understanding now, so they reversed their position. They had said that they had joint ownership with the judicial district and that them and the judicial district would, going forward, no longer have the plaza be designated as a public forum. And so Denver's position was relevant peripherally, but it wasn't relevant as to the point. But that was over a year after they had violated the preliminary injunction. No, but this goes to the question of whether the dissolving of the order was actually declaring that order, the preliminary injunction, erroneous. And if it was declared erroneous, that goes back to the rule that's being advocated for, which is that you can't be held in contempt of an invalid order. And so that's why it is significant as to whether Denver's change of position really mattered. Because if it didn't, and the Court is saying now, doing this analysis, I find that, in fact, what I did before was erroneous, irrespective of what Denver says or did, then that's a problem, isn't it? I don't think so, Your Honor, because I think the standard for a preliminary injunction is different than a standard for a permanent injunction. Number one, there are multiple factors to a preliminary injunction test, so the standard is completely different. And number two, the Tenth Circuit had already said that injunction was valid. The Tenth Circuit, a court higher than... Based on the scope of review of abuse of discretion. Correct. Now we're at de novo review on a question of law, right? Correct. Different animals. They're different animals. I'll give you that, Your Honor. But I think to your point, Judge Holmes, also, I think that the change in status was on the district court's minds. It specifically issued an order asking why Denver shouldn't be back in the case. It talked about the reversal for pages in its final findings of fact and conclusions of law. It talked about how Denver was still bound by its stipulation and that it couldn't itself, the judicial district could, but Denver itself could not institute anything more than time, place, and manner restrictions on the Lindsay, Flanagan Plaza because they had designated a public forum. But if it, if the court determined that its earlier determination was erroneous, then that would cause the order to be invalid. So do you accept, and save a minute to talk to me about jurisdiction, do you accept the premise that the court determined that what it did before was erroneous, or are you saying that it was on a different playing field, and therefore there wasn't an inference of an erroneous determination earlier? The second, Your Honor. I would say that the circumstances had changed. It was clear that the court found that the circumstances had changed, and that's why the court dismissed Denver out of the case, and that's why after the memorandum of understanding, the court put out an order saying should Denver be added back into the case, and that's why the court spent so much time in its final order talking about Denver of non-party to the case, someone who, if they had no significance to the case at all, why would they take up pages and pages of judicial resources? Was there a different universe of facts before the court when it ruled on that dissolution than was before the court when it made its initial determination as it relates to the preliminary injunction? Certainly. Okay. Well, talk to me now about jurisdiction. You heard my concern, and my concern is predicated on the notion that essentially it seems to me you have a finding of liability that doesn't have an attachment to it. It is not concrete and specific. Our terminology in O'Connor, and we talked about this in Gonzales, they both say the same thing, that if all you get is you are in contempt, period, and you don't do anything to attach to that, that is interlocutory, that is not fine. I think, Your Honor, we cited one case in our briefing on this issue, and it's the Hyde Construction Company case, and it talks about contempt against a non-party, and Denver at this point is a non-party to the litigation. And if the site for that case is 348 F2nd 643. If it's not in your brief, give us a 28J letter. Oh, it's in the brief, Your Honor. Okay. It's in the brief, but I saw a judge writing down, so I figured I'd help you out. So I think that Denver is not a party. They can take an interlock, essentially, of this contempt finding because they're a non-party to the litigation, and I think that Hyde Construction Company satisfies those concerns. But we are disagreeing with Denver. No, no. If it's interlocutory, you're done. So one shouldn't be saying it's interlocutory because it's either a final order or it's not. I mean, the contempt finding determination needs to be final in this case for 1291 purposes, or we have no jurisdiction. So was that a misstatement? Yeah, that was a misstatement, Your Honor. It's a final order. Now, with regard to specificity, I think it's important to look at exactly what the court, district court, said in its injunction order. It specifically said, passing out literature on the Lindsay Planning Plaza, you couldn't be arrested for it. The two specific pamphlets that the person arrested for passing out the pamphlets was arrested for, those specifically, I don't know what more specificity there could be in an injunction. And I think that a case that's in our brief, the Casale case, talks about New York City cops and the duty to inform. And in that case, they had taken way further efforts than Denver took in this case. They had done multiple trainings. They had removed the two enjoined ordinances from the books. And they, and then still the court said that wasn't enough, that New York City almost had strict liability to make sure that its cops knew that they couldn't enforce an enjoined ordinance. Well, this is all driven by what's in the preliminary injunction, right? And so was the language in that preliminary injunction more specific than in this one? No, Your Honor. It's specific. All it said was that these two ordinances were enjoined as unconstitutional and shouldn't be enforced. And it imputed that to the officers, agents of New York and employees of New York City. That's the Southern District of New York case. Obviously, it's not binding authority, but I think it's persuasive. Now, with regard to evidence of the violation, Denver takes a position that we haven't shown that it didn't educate its officers or didn't inform its officers. But I think, as I said earlier, the evidence is pretty clear. And even if it isn't, I think Denver is just taking a different read of the evidence. As you know, transcripts are sterile. If you were at the hearing, you would have seen that Corporal Waldock, who was the only officer from District 6 who testified, had very little training on anything regarding the First Amendment, let alone this particular order. And the transcript is in the record. The transcript is in the record, Your Honor. So I'd just like to conclude by saying Denver, like the district court said in its findings of fact and conclusions of law, in this case, wants to have its cake and eat it, too. And by reversing its position, it's now saying that the preliminary injunction shouldn't be able to be enforced against them for their violation of it. I think that this court should hold Denver in contempt, just as the district court did, and affirm based on the abusive discretion standard. If you don't have any further questions, I'd like to see the rest of my time. Thank you. Thank you. I think you had used all of your time. Is that correct? Thank you both for your arguments this morning and your cases submitted.